Preserve Pine Plains v Town of Pine Plains Planning Bd. (2024 NY Slip Op 50696(U))

[*1]

Preserve Pine Plains v Town of Pine Plains Planning Bd.

2024 NY Slip Op 50696(U)

Decided on June 4, 2024

Supreme Court, Putnam County

Molé, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 4, 2024
Supreme Court, Putnam County

Preserve Pine Plains, PAVAN GATTANI, ANNA MARIA GATTANI, KATHLEEN VUILLET AUGUSTINE, and JAMES PINTO,

against
Town of Pine Plains Planning Board, PULVERS CORNER SOLAR 1 LLC, PULVERS CORNER SOLAR 2 LLC, NEXAMP, INC., CARSON POWER LLC, SOLAREIT 1 A LLC, JOHN DOES 1-10, and ABC CORPORATIONS 1-10, Respondents.

Index No. 500087/2024

THE ZOGHLIN GROUP, PLLC 
Attorneys for Petitioners
Attn: Mindy L. Zoghlin, Esq., Jacob H. Zoghlin, Esq., & Ryan Ockenden, Esq. 
300 State Street, Suite 502 Rochester, NY 14614 
HODGSON RUSS LLP 
Attn: Daniel A. Spitzer, Esq. & Alicia Legland, Esq. 
677 Broadway — Suite 401 
Albany, New York 12207
Attorneys for Respondents Carson Power LLP, Pulvers Corner Solar 1 LLC, Pulvers Corner Solar 2 LLC, Nexamp, Inc., Carson Power LLC, Carol Giardino, Diane Weck, the Estate of Lucie Giardino, and Solareit 1 A LLC
WARREN S. REPLANSKY, P.C. 
Attorney for Respondent The Town of Pine Plains Planning Board
Attn: Warren S. Replansky, Esq. 
P.O BOX 838 
60 East Market Street 
Rhinebeck, New York 12572 

Anthony R. Molé, J.

I. Background
This is a proceeding pursuant to CPLR article 78. Petitioners initially commenced this proceeding in Dutchess County to review a determination of respondent Town of Pine Plains Planning Board (hereinafter the Planning Board), granting the application of respondents Pulvers Corner Solar 1 LLC and Pulvers Corner Solar 2 LLC ("Pulvers") for a special use permit. The case was transferred to the undersigned following recusal of all Supreme Court Justices in Dutchess County,[FN1]
 and a subsequent recusal by a Justice of this Court. Some preliminary background is first necessary to bring this matter into context.
Pulvers, along with its developers (hereinafter the developer), endeavors to build a major solar energy facility in the Town of Pine Plains (hereinafter the Town), in Dutchess County. In that pursuit, Pulvers applied in November 2022 to the Planning Board for a special use permit and site plan approval to construct a large-scale solar energy facility at 454 Bean River Road in the Town. The solar facility is to be situated on a 42-acre portion of an approximately 172-acre property and would consist of roughly 23,000 photovoltaic panels that are 12 feet high. Pulvers' project is called the "Carson Solar Power Project" (the solar project).
Pursuant to the Town's zoning ordinance, the solar project would fall under Tier 3 as a large-scale solar installation because it would produce greater than 110% of on-site energy demand, thus requiring, inter alia, a special use permit, public hearing, and site plan review (Town of Pine Plains, Zoning Law § 275-24 [D]). The Planning Board opened public hearing and public comment on the solar project on or about January 21, 2023; and additionally, conducted several meetings on the project given the various positions and submissions of the developer and the public.
In February 2023, the Planning Board passed a resolution classifying the solar project as a type I action and declared itself the lead agency pursuant to the State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]). During the review process, the Planning Board examined the developer's plan, conducted several meetings on the proposed solar project, and requested additional information from the developer. On February 8, 2023, March 8, 2023, June 10, 2023, and October 11, 2023, the Planning Board held public hearings to solicit public comments about, among other things, its potential environmental impacts on the area. In addition, the Planning Board consulted with the Town and the developer's engineers about the project, and extensively discussed the project with attorneys and consultants retained by neighboring property owners, the developer's consultants, and the Town's engineers. During public hearings, the individual petitioners voiced their complaints and opposition to the solar project, citing concerns about various negative environmental impacts and decreased property values of their homes.
On August 17, 2023, the Town passed a moratorium on the processing and approval of applications for special use permits for Tier 3 solar facilities; but in doing so, specifically exempted the solar project at issue in this case. Numerous public hearings were held during the environmental review during which petitioners had a meaningful opportunity to participate in the process and raised their concerns about the solar project.
On August 23, 2023, the Planning Board issued a negative declaration, finding that the proposed construction of a solar energy facility at the site would not have a significant adverse environmental impact. The Planning Board found there was no need to prepare and draft an Environmental Impact Statement (EIS).
Public hearings on the solar project concluded in October of 2023. On November 28, 2023, the Planning Board unanimously voted to approve Pulvers' application for a site plan and issued a special use permit for the solar project, subject to 27 conditions.
Petitioners commenced this CPLR article 78 proceeding in December 2023 seeking to annul the Planning Board's determination. The petitioners consist of an unincorporated association called Preserve Pine Plains (PPP), and four individuals who are members of the association, reside in the Town, and own residential property that is situated near or in close proximity to the solar project. As existing homeowners, the individual petitioners claim that operation of a major solar facility near their residential homes will increase stormwater run-off and cause economic harm by decreasing the real property values of their homes.
In January 2024, petitioners amended their petition and notice thereof. On March 4, 2024, the Planning Board interposed an answer with five affirmative defenses. Also, Pulvers, along with corespondents, Carson Power LLC, Nexamp, Inc., and SolaREIT 1-A, LLC ("SolaREIT"), jointly filed a collective answer and objections to point of law.[FN2]

Petitioners request a vacatur and annulment of the special use permit to prevent construction of the solar project. They are challenging the Planning Board's determinations on several grounds.
Petitioners are seeking a permanent injunction prohibiting the developer from doing any site work (including, but not limited to, tree removal) at the project site; annulling and vacating the negative declaration of the Planning Board made pursuant to SEQRA; annulling and vacating the special use permit issued by the Planning Board; and awarding them attorneys' fees, costs, and disbursements.
In their amended petition, petitioners assert two causes of action: (1) the special use permit ought to be vacated and annulled; and (2) the Planning Board's negative declaration must be set aside since it failed as the lead agency under SEQRA to take the requisite hard look at potentially significant adverse environmental impacts. Petitioners press that the solar project conflicts with the Town's zoning laws and comprehensive plan, and that the Planning Board incorrectly issued a negative declaration in finding that a full environmental review was not required before issuing the special use permit.
The Planning Board and the developer oppose in all respects, requesting dismissal of the [*2]proceedings on the merits, to confirm the Planning Board's determinations in rendering the negative declaration and issuing the special use permit, and awarding judgment in favor of respondents. Upon reassignment to this Court, the undersigned held oral argument on May 3, 2024 since petitioners had requested as much (see Uniform Rules for Trial Cts [22 NYCRR] § 202.8 [d]).
The relevant facts are contained in the record and are not disputed by the parties. A CPLR article 78 proceeding is a special proceeding (see CPLR 7804 [a]), and "may be summarily determined 'upon the pleadings, papers and admissions to the extent that no triable issues of fact are raised'" (Matter of Davis v Peterson, 254 AD2d 287, 287 [2d Dept 1998], quoting CPLR 409 [b]).
A summary determination is appropriate here pursuant to CPLR 409 (b). For the reasons that follow, the petition is denied and dismissed in its entirety.[FN3]

II. Joinder of Solareit
As a preliminary matter, the developer asserts in its answer that petitioners failed to seek leave of court to amend the petition under CPLR 401 in joining SolaREIT as a respondent-party in this proceeding. The developer summarily briefed this objection in their reply papers, not its opposition papers. 
Briefly, SolaREIT acquired the real property where the solar project is being constructed, taking title to the parcels on or about January 9, 2024 — well after the negative declaration and special use permit were issued. Petitioners filed the amended petition two days later and served SolaREIT with process thereof.
CPLR 401 dictates that after a proceeding is commenced, no party shall be joined or interpleaded, except by leave of court. Were this Court to determine that petitioners failed to obtain leave to join SolaREIT as a respondent-party, it could theoretically treat petitioners' causes of action against SolaREIT in the amended petition as a nullity (see Matter of Barrett v Dutchess County Legislature, 38 AD3d 651, 653 [2d Dept 2007]; see also Matter of Czajka v Dellehunt, 125 AD3d 1177, 1181-1182 [3d Dept 2015]). But given the timeline of petitioners' commencement of this proceeding and SolaREIT's acquisition of the property well after the special permit was issued, it declines to do so based on the posture. 
Petitioners assert that they swiftly joined SolaREIT in this proceeding by amending their petition as soon as they learned that SolaREIT took title to the property in early January 2024 — which was memorialized by a filing in the Dutchess County Clerk's Office. Petitioners also contend that SolaREIT is not prejudiced by the joinder. The Court agrees with these points.
Notably, SolaREIT appeared in this matter collectively with the developer. Petitioners are correct in that this issue was not squarely briefed in the developer's opposition papers as it relates to SolaREIT who, at this juncture, would not be prejudiced by a belated joinder without leave of court. SolaREIT was served with a copy of the amended pleading on January 11, 2024 and it appeared on February 8, 2024 through counsel when its attorney confirmed in a letter [*3]correspondence that it was formally appearing on behalf of all the named respondents, except for the Planning Board (see NY St Cts Elec Filing [NYSCEF] Doc No. 84, letter). The foregoing was further acknowledged in a so-ordered stipulation (see NYSCEF Doc No. 86, so-ordered stipulation).
No one disputes that SolaREIT is a necessary party (see generally CPLR 1001 [necessary joinder]). At the same time, SolaREIT has not raised any jurisdictional defenses that it was not properly served with process and the Court lacks personal jurisdictional over it (compare Matter of Czajka v Dellehunt, 125 AD3d at 1181-1182). Although raised by the developer in their answer as an objection in point of law (see NYSCEF Doc No. 115, answer at 17, ¶ 41), the Court finds that SolaREIT has since abandoned its argument concerning its purportedly improper joinder by not raising it in its opposition papers.[FN4]
SolaREIT would not be prejudiced by the joinder. Its joinder is not only necessary here, but also practical for purposes of judicial economy.
III. Standing
Before turning to the merits, we must first begin with addressing the issue of standing since it "is a threshold determination, resting in part on policy considerations, that a person should be allowed access to the courts to adjudicate the merits of a particular dispute that satisfies the other justiciability criteria" (Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 769 [1991]). Though not addressed at great length, petitioners and the developer dispute standing.
The developer claims that petitioners lack standing to maintain this proceeding inasmuch as the organization PPP has failed to demonstrate that its members would suffer any direct harm or environmental injury different from that of the public, relying solely on generalized, conclusory allegations of harm to the four individual petitioner-members and the general public. The developer argues that petitioners will not visibly see the solar project from their residential properties because it will be completely surrounded by conserved land; the residential properties of the individual petitioners do not border the area of the proposed tree clearing; the solar project will be sited on private property, not used or enjoyed by petitioners; and that the individual petitioners will not be able to view or experience the change in any publicly accessible lands when the solar facility is erected.
Rejecting the developer's assertions, petitioners maintain that they have established standing since each of the individuals who brought this proceeding reside or own residential property situated adjacent to, across the street from, or within the immediate vicinity of the site of the solar project. Petitioners claim economic and environmental harm inasmuch as the solar facility will be constructed close to their homes, diminish their enjoyment of the bucolic community, and that operation of the solar project adjacent or close to their properties will negatively impact their property values and increase stormwater run-off.
"As relevant here, for an organization to have standing to bring a CPLR article 78 proceeding challenging administrative decision-making, it must show that one or more of its [*4]members would have standing to sue that the interests it asserts are germane to its purposes so as to satisfy the court that it is an appropriate representative of those interests and that neither the asserted claim nor the appropriate relief requires the participation of the individual members" (Matter of Friends of the Shawangunks v Town of Gardiner Planning Bd., 224 AD3d 961, 962 [3d Dept 2024] [internal quotation marks, brackets, ellipses, and citations omitted]). "To establish a member's standing, petitioner was required to show the existence of an injury in fact and that the in-fact injury of which it complains (its aggrievement, or the adverse effect upon it) falls within the zone of interests, or concerns, sought to be promoted or protected by the provision of law under which the administrative body has acted" (id. at 962-963 [internal quotation marks, brackets, ellipses, and citations omitted]). "The injury-in-fact requirement necessitates a showing that the party has an actual legal stake in the matter being adjudicated and has suffered a cognizable harm that is not tenuous, ephemeral, or conjectural[,] but is sufficiently concrete and particularized to warrant judicial intervention" (Matter of Mental Hygiene Legal Serv. v Daniels, 33 NY3d 44, 50 [2019] [internal quotation marks and citations omitted]; accord Matter of Festa v Town of Oyster Bay, 210 AD3d 678, 680 [2d Dept 2022]).
So, to establish standing in order to challenge the Planning Board's administrative determinations, petitioners must show that they will suffer an injury-in-fact and that the alleged injury falls within the zone of interests sought to be protected by the statute (Matter of Veteri v Zoning Bd. of Appeals of the Town of Kent, 202 AD3d 975, 979 [2d Dept 2022]). "In land use matters, a petitioner must show 'direct harm, injury that is in some way different from that of the public at large'" (id., quoting Society of Plastics Indus. v. County of Suffolk, 77 NY2d at 774).
Individual property owners can likewise establish standing. "An allegation of close proximity may give rise to an inference of damage or injury that enables a nearby property owner to challenge a land use decision without proof of actual injury. However, this does not entitle the property owner to judicial review in every instance. In addition to establishing that the effect of the proposed change is different from that suffered by the public generally, the property owner must establish that the interest asserted is arguably within the zone of interests the statute protects" (Matter of Veteri v Zoning Bd. of Appeals of the Town of Kent, 202 AD3d at 979 [internal quotation marks, brackets, and citations omitted]).
Precedent dictates that "[s]tanding should be liberally construed so that land use disputes are settled on their own merits rather than by preclusive, restrictive standing rules" (Matter of Barrett v Dutchess County Legislature, 38 AD3d at 653). "Interest and injury are not synonymous" (Matter of Citizens Emergency Comm. to Preserve Preserv. v Tierney, 70 AD3d 576, 576 [1st Dept 2010], lv denied 15 NY3d 710 [2010] [internal quotation marks omitted]).
The Court of Appeals has expressed that standing rules should not be applied heavy-handedly in zoning litigation by declaring that it is "reluctant to apply standing principles in an overly restrictive manner where the result would be to completely shield a particular action from judicial review" (Matter of Association for a Better Long Is., Inc. v New York State Dept. of Envtl. Conservation, 23 NY3d 1, 6 [2014]). Such a result "would effectively insulate [a municipality's] actions from any review and thereby run afoul of our pronouncement that the standing rule should not be so restrictive as to avoid judicial review" (Matter of Sierra Club v Vil. of Painted Post, 26 NY3d 301, 311 [2015]). Critically, "an allegation of close proximity alone may give rise to an inference of damage or injury that enables a nearby owner to challenge a zoning board decision without proof of actual injury" (Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead, 69 NY2d 406, 414 [1987]).
Here, the Court holds that petitioners, including Augustine, have standing to maintain this proceeding. The record reflects that the four individual petitioners are all members of the association and own residential property that is between 700 to 1900 feet from where the solar panels would be installed at the project site. Petitioners are arguably within the zone of interests to be protected by SEQRA. They have "standing to seek judicial review without pleading and proving special damage, because adverse effect or aggrievement can be inferred from the proximity" of where they live (Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead, 69 NY2d at 410). Because Augustine, Pinto, and the Gattanis are all individual members of PPP, their standing is attributable to the organization (see CPLR 1025).
Where, as here, the facility and solar panels are immediately adjacent to or in relatively close proximity to the properties of the individual petitioners, a loss of value may be presumed from the depreciation of the character of the immediate neighborhood. Hence, the individual petitioners need not allege specific injury. Their specific allegations of close proximity give rise to an inference of damage and injury, thereby permitting them to bring and maintain this proceeding. The Court further recognizes that they have an interest in the litigation by virtue of their status as owners of adjoining or nearby properties.
"[I]t is desirable that land use disputes be resolved on their own merits rather than by preclusive, restrictive standing rules" (Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead, 69 NY2d at 413). The Court finds that the allegations raised in the amended petition go beyond a mere interest in environmental conservation and are sufficient to demonstrate injury-in-fact in this land use proceeding. Because the individual members own residential properties in close proximity to the site of the proposed development, the Court can logically infer that they have or will suffer an injury traceable from respondents' conduct in the event a major solar facility is constructed near their homes. And importantly, petitioners' claim that the property values of their homes will be diminished in light of the Planning Board's approval of a large-scale solar facility at the site falls within the zone of interests of the zoning regulations and therefore confers standing (see id. at 415-416; Town of N. Elba v Grimditch, 131 AD3d 150, 156 [3d Dept 2015], lvs denied 26 NY3d 903 [2015]; Matter of Shapiro v Town of Ramapo, 98 AD3d at 677; Matter of Oefelein v Town of Thompson Planning Bd., 9 AD3d 556, 557-558 [3d Dept 2004]).
This Court also finds that petitioner PPP has organizational standing insomuch as the association was primarily formed to protect and preserve the Town's community character and environmental resources around the site of the solar project, safeguard natural resources, maintain aesthetic resources, and ensure that any proposed projects in the area comply with the law. Moreover, petitioners alleged that PPP and its members fear that the solar project will cause significant adverse environmental impacts and impede on the members' use and enjoyment of the area, that it is incompatible with the community character based on the surrounding properties, would disrupt the natural environment in the area, and negatively impact the scenic features and enjoyment. Indeed, New York courts have long recognized that, assuming the elements of standing are otherwise met, a neighborhood organization like PPP that is formed to protect the surrounding environment may be accorded standing based on an interest distinct from the public at large (see Matter of Shapiro v Town of Ramapo, 98 AD3d 675, 677 [2d Dept 2012], lv dismissed 20 NY3d 994 [2013]; Matter of Defreestville Area Neighborhood Assn., Inc. v Planning Bd. of Town of N. Greenbush, 16 AD3d 715, 718 [3d Dept 2005]; see also Shinnecock Neighbors v Town of Southampton, 53 Misc 3d 874, 878-880 [Sup Ct, Suffolk County 2016]).
Furthermore, the interests asserted by PPP as an association are germane to its purposes, and the participation of its members is not necessary in order for PPP to obtain the relief it seeks. PPP has thus satisfied all relevant criteria to establish standing in this matter (see Society of Plastics Indus. v. County of Suffolk, 77 NY2d at 775; Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead, 69 NY2d at 415-416; Matter of Schlemme v Planning Bd. of City of Poughkeepsie, 118 AD3d 893, 894 [2d Dept 2014]; Matter of Stony Brook Vil. v Reilly, 299 AD2d 481, 484 [2d Dept 2002] [amended 2003]; see also General Associations Law § 12).
Although the individual members have not precisely shown the extent of their alleged financial harm by the decreased real property values of their residences, they have, at a minimum, sufficiently alleged environmental harm. The Court thus concludes that the claimed injuries to the individual members' aesthetic use and enjoyment of that area of the Town falls within the zone of interests sought to be protected by SEQRA and the Town's zoning provisions. Therefore, the Court holds that petitioners have established standing to challenge the Planning Board's determinations as it concerns SEQRA and issuance of the special use permit (see Society of Plastics Indus. v. County of Suffolk, 77 NY2d at 775-777; Matter of Green Earth Farms Rockland, LLC v Town of Haverstraw Planning Bd., 153 AD3d 823, 826 [2d Dept 2017]; see also Town of Pine Plains Zoning Law § 275-55).
IV. Standard of Review
Petitioners here directly challenge the determinations made by the Planning Board of the Town of Pine Plains. "Municipal land use agencies like the [Planning] Board are quasi-legislative, quasi-administrative bodies" who conduct informal public hearings on, inter alia, proposed projects (Matter of Halperin v City of New Rochelle, 24 AD3d 768, 770 [2d Dept 2005], lvs denied 6 NY3d 890 [2006], 7 NY3d 708 [2006] [internal quotation marks and citation omitted]). The standard by which the Planning Board's determinations must be gauged is "whether the determination[s] [were] affected by an error of law, or [were] arbitrary and capricious or an abuse of discretion, or [were] irrational" (Matter of Abramovitz v Zoning Bd. of Appeals of the Inc. Vil. of Bellport, 194 AD3d 810, 811 [2d Dept 2021] [internal quotation marks and citations omitted]; see CPLR 7803 [3]; Matter of Sasso v Osgood, 86 NY2d 374, 384 [1995]). This Court must apply the arbitrary and capricious standard of review in examining the merits of petitioners' challenges.
V. SEQRA Review
A. Greenway Compact
Initially, petitioners contend that the Planning Board failed to consider the effects of the solar project with respect to the Greenway Compact insofar it is required by the Town's zoning ordinance (see Town of Pine Plains Zoning Law § 275-36). The Court rejects this argument.
By way of background, the Greenway Compact came into effect in the 1990s when the New York State Legislature adopted article 44 of the Environmental Conservation Law, which created the Hudson River Valley Greenway (hereinafter the Greenway). "The purpose of this article was to 'protect and enhance the special places of scenic, cultural and ecological [*5]importance' in the Hudson River Valley" (Town of Rhinebeck v State of New York, 146 AD3d 1001, 1001 [2d Dept 2017], quoting ECL 44-0101). "Among other things, the Greenway legislation created a regional planning council and gave communities within its range the opportunity to enter into the 'Greenway Compact,' a voluntary regional compact among municipalities to facilitate cooperative planning" (Town of Rhinebeck v State of New York, 146 AD3d at 1001; see ECL 44-0103 [2], [4]; 44-0119).
The Greenway Compact is a voluntary program created for planning assistance in land use matters, issuing monetary grants, and other benefits to communities in the Hudson River Valley that aim to protect natural and cultural resources. The Town participates in the Greenway Compact. Pursuant to its zoning ordinance, the Town is required to "consider an application's consistency with the principles set forth in 'Greenway Connections' in its decision[-]making process" when reviewing applications for a site plan or special use permit (Town of Pine Plains Zoning Law § 275-36).
Petitioners argue that the Planning Board did not thoroughly evaluate two critical aspects of advice and consistency with the Greenway Compact in reaching its final determination: (1) whether the rural development fit into the landscape by minimizing the clearing of vegetation and preserving natural features, and (2) whether habitat protection was overlooked by disregarding coexistence with endangered animal species. Respondents dispute as much by maintaining that the Planning Board adequately considered the solar project's consistency with the Greenway Compact since it spent nearly a year considering potential environmental impacts, which included a condition with the special use permit that the entire project site would be preserved under a permanent conservation easement.
The Court sides with respondents' view. The Greenway Compact is not so inextricably related to the project at issue since it was permitted pursuant to Local Law No. 3 (2022) of the Town, entitled "Accessory Solar Installations" (hereinafter Local Law No. 3) — not the zoning law. A solar project being developed in a single municipality that does not involve agriculture, tourism, urban redevelopment, or public access area is immaterial in the pursuit of achieving Greenway's goals. Secondly, the Planning Board considered the environmental impact to the area, made the desired adjustments, and imposed 27 conditions on the special use permit. Development of the solar facility was sited and adjusted in a manner that fits into the landscape and away from surrounding residential properties and public roadways.
Further, the Planning Board strived to protect the habitat by directing the installation of pass-through fences, limiting the cutting of trees between a proscribed time period to protect bats in the area, directed the installation of bat boxes, and the planting of meadowland to preserve and protect the yellowtail butterfly. And despite petitioners' concern with widespread tree cutting and removal, respondents strived to preserve natural features of the area vis-à-vis a permanent conservation easement encumbering the property and adjusting the location of the solar panels on the property site to minimize visual impact. Hence, the Planning Board adequately considered the solar project's consistency with the Greenway Compact. Petitioners' claims in this regard are without merit.
B. Negative Declaration
Turning next to the Town's negative declaration, petitioners contend that the Planning [*6]Board erred by not completing an EIS given that the solar project is a type I action, and therefore, the Planning Board failed to comply with SEQRA by taking a close and hard look at potential adverse environmental impacts — including, among other things, the aesthetic resources, endangerment of a bat and butterfly species, removal of various forestry, threating harm or endangerment to plants and animals, and removal of 29.7 acres of vegetation consisting mostly of mature forest area. Petitioners thus ascribe error in the Planning Board's negative declaration, urging that it should be set aside because the Planning Board overlooked significant adverse impacts to the environment by construction of the solar project inasmuch as it is being constructed in the Town's rural zoning district.
The Planning Board, in opposition, counters that it fulfilled its responsibilities under SEQRA and thoroughly evaluated the environmental impacts of the solar project. In this regard, the Planning Board asserts that it spent more than a year carefully considering the potential environmental impacts of the solar project and then identified and evaluated those impacts in a detailed SEQRA review — before it finally arrived at its decision to issue a negative declaration.
The Planning Board disputes all of petitioners' claims relative to SEQRA and in doing so, point out that petitioners do not squarely raise any procedural violations of SEQRA in the review of the solar project. According to the Planning Board, review here is limited to whether it purportedly violated the substantive requirements of SEQRA in failing to identify and take a close look at the environmental impacts of the solar project and then making a reasoned elaboration in reaching its determination.
Petitioners, however, maintain that the solar project is not suitable at the proposed site due to its sheer scale and intensity in relation to environmentally sensitive features. Petitioners further claim that the Planning Board should have denied the special use permit for the solar project because it does not meet the requirements of the Town's zoning ordinances and because a large-scale solar installation is environmentally incompatible with the neighboring properties and surroundings of the community. According to petitioners, the solar project is wholly inconsistent with the Town's comprehensive plan and community character.
Petitioners posit that the solar project is being constructed in an improper location due to its large-scale nature because it will be developed on steep slopes that could be eroded when large swaths of trees and plants are removed. Petitioners surmise that the solar project is incompatible with the character of the neighborhood since it will allegedly reduce the property values of the surrounding homes, negatively impact scenic and natural features of the area, and erode natural vegetation. Petitioners strongly believe that an EIS should have been prepared here and a positive declaration should have been issued given the low threshold in rendering one.
Upon examining the vast administrative record here, the Court finds petitioners' claims relative to SEQRA and the negative declaration to be unavailing. The Court concludes that the Planning Board did not violate the substantive requirements of SEQRA insomuch as it took a close and extensive look at possible adverse environmental impacts stemming from the solar project (see Matter of Biggs v Eden Renewables LLC, 188 AD3d 1544, 1546 [3d Dept 2020]). In reaching this conclusion, the Court recites long-standing legal authority and prior precedent.
"The purposes of SEQRA, as stated by the Legislature, are to encourage productive and enjoyable harmony with our environment; 'to promote efforts which will prevent or eliminate damage to the environment and enhance human and community resources; and to enrich the understanding of the ecological systems, natural, human and community resources important to the people of the state'" (Society of Plastics Indus. v. County of Suffolk, 77 NY2d at 777, quoting [*7]ECL 8-0101). A court reviewing a SEQRA determination is "limited to considering 'whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion'" (Chinese Staff & Workers Assn. v. City of New York, 68 NY2d 359, 363 [1968], quoting CPLR 7803 [3]).
"It is not the role of the courts to weigh the desirability of any action or choose among alternatives, but to assure that the agency itself has satisfied SEQRA, procedurally and substantively. To that end, SEQRA mandates literal compliance with its procedural requirements and substantial compliance is insufficient to discharge the responsibility of the agency under the act" (Matter of Cedar St. Comm. v Board of Educ. of the E. Hampton Union Free Sch. Dist., 223 AD3d 738, 739-740 [2d Dept 2024] [internal brackets, quotation marks, and citations omitted]).
"The heart of SEQRA is the Environmental Impact Statement . . . process. Under the act, an EIS must be prepared regarding any action that 'may have a significant effect on the environment'" (Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 415 [1986], quoting ECL 8-0109 [2] [citation omitted]). Such a significant effect "is presumed to be likely where, as here, a type I action is involved; however, a type I action does not, per se, necessitate the filing of an EIS" (Matter of Village of Ballston Spa v City of Saratoga Springs, 163 AD3d 1220, 1222-1223 [3d Dept 2018]; see ECL 8-0109 [2]; 6 NYCRR 617.4 [a] [1])."Generally, a negative declaration may be issued, obviating the need for an EIS, if the lead agency determines that 'no adverse environmental impacts will result or that the identified adverse environmental impacts will not be significant" (Matter of Town of Copake v New York State Off. of Renewable Energy Siting, 216 AD3d 93, 99-100 [3d Dept 2023] [internal brackets, ellipses, and citation omitted], lv dismissed 41 NY3d 990 [2024], quoting 6 NYCRR 617.7 [a] [2]). "The lead agency's determination of significance must be in writing, contain 'a reasoned elaboration' and provide 'reference to any supporting documentation'" (Matter of Village of Ballston Spa v City of Saratoga Springs, 163 AD3d at 1223, quoting 6 NYCRR 617.7 [b] [4]).
"Judicial review of a negative declaration under SEQRA is limited to whether the lead agency identified the relevant areas of environmental concern, took the requisite hard look, and made a reasoned elaboration of the basis for its determination" (Matter of Cedar St. Comm. v Board of Educ. of the E. Hampton Union Free Sch. Dist., 223 AD3d at 740). "'Not every conceivable environmental impact, mitigating measure or alternative must be identified and addressed in order to satisfy the substantive requirements of SEQRA,' and therefore, 'the degree of detail with which each factor must be discussed will vary with the circumstances and nature of the proposal'" (id., quoting Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d at 417 [internal brackets and ellipses omitted]).
"[W]here an agency has followed the procedures required by SEQRA, a court's review of the substance of the agency's determination is limited" (Matter of Eadie v Town Bd. of Town of N. Greenbush, 7 NY3d 306, 318 [2006]). "[T]he Legislature in SEQRA has left the agencies with considerable latitude in evaluating environmental effects and choosing among alternatives," and "[n]othing in the law requires an agency to reach a particular result on any issue, or permits the courts to second-guess the agency's choice" (Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d at 417). "Nevertheless, an agency, acting as a rational decision maker, must have conducted an investigation and reasonably exercised its discretion so as to make a reasoned elaboration as to the effect of a proposed action on a particular environmental concern" (Akpan v Koch, 75 NY2d 561, 571 [1990]).
"While the judicial review must be genuine, the agency's substantive obligations under SEQRA must be viewed in light of a rule of reason and the degree of detail with which each environmental factor must be discussed will necessarily vary and depend on the nature of the action under consideration" (Matter of Gernatt Asphalt Prods. v Town of Sardinia, 87 NY2d 668, 688 [1996] [internal quotation marks and citation omitted]). "Thus, while a court is not free to substitute its judgment for that of the agency on substantive matters, the court must ensure that, in light of the circumstances of a particular case, the agency has given due consideration to pertinent environmental factors" (Akpan v Koch, 75 NY2d at 571).
"A lead agency need not investigate every conceivable environmental problem during the course of SEQRA review, and generalized community objections or speculative environmental consequences are not sufficient to establish a SEQRA violation. Further, a lead agency improperly defers its duties when it abdicates its SEQRA responsibilities to another agency or insulates itself from environmental decision-making. With that being said, a lead agency without environmental expertise to evaluate a project may rely on outside sources and the advice of others in performing its function, so long as the lead agency exercises its own judgment in determining whether a particular circumstance adversely impacts the environment" (Matter of Town of Copake v New York State Off. of Renewable Energy Siting, 216 AD3d at 100 [3d Dept 2023] [internal brackets, quotation marks, and citations omitted]).
Here, a major solar facility requires a special use permit and a site plan, as set forth in the Town's zoning ordinance and Local Law No. 3. In its adoption, the Town recognized that installation of Tier 3 large-scale solar facilities shall be permitted in all Town zoning districts (see Town of Pine Plains Zoning Law § 275-24 [A]). Local Law No. 3 regulates major solar facilities classified as Tier 3 by seeking "to preserve large parcels of land in [the Town] and carefully regulate large-scale solar farms that generate energy for areas outside of the Town" (id. § 275-24 [D] [3]).
Pursuant to Local Law No. 3, an applicant seeking to install a large-scale solar installation in the Town, such as the one here, must obtain site plan approval and a special use permit from the Planning Board (see Town of Pine Plains Zoning Law § 275-24 [D]). The Town's zoning ordinance requires the Planning Board, in reviewing all proposed site plans, to make detailed determinations with respect to, among other things, SEQRA, parking, accessibility by emergency vehicles, impact on the character of the Town, neighborhood, or values of surrounding property, traffic control, lighting, adequate use of utilities, and the compatibility of the proposed use with historic, scenic, or natural environmental features on-site or within the adjoining neighborhood (see id. § 275-55 [B]). And with respect to a major solar energy installation as the project here, the Planning Board must "review the application and visual impact study for proposed lighting, site security, grading and clearing of vegetation, and for impacts to rural character, farms, farm structures, and ridgelines" (Town of Pine Plains Zoning Law § 275-24 [D] [5] [a]).
The Planning Board may authorize issuance of a special use permit after there has been notice and public hearings, but in doing so, it must "take into consideration the public health, safety, and welfare and shall prescribe appropriate conditions and safeguards to ensure accomplishment" of the 11 objectives that are listed in the Town's zoning ordinance (id. § 275-55 [B]). A large-scale solar installation must comply with all the substantive and procedural requirements of a special use permit review that are set forth in section 275-55 of the Town's [*8]zoning ordinance (see id. Law § 275-24 [D] [1]).
"In applying the "arbitrary and capricious" standard, a court inquires whether the determination under review had a rational basis. Under this standard, a determination should not be disturbed unless the record shows that the agency's action was 'arbitrary, unreasonable, irrational[,] or indicative of bad faith'" (Matter of Halperin v City of New Rochelle, 24 AD3d at 770, quoting Matter of Cowan v Kern, 41 NY2d 591, 599 [1977]). "Arbitrary action is without sound basis in reason and is generally taken without regard to the facts" (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]).
Applying the governing legal principles here, the Court holds that the Planning Board satisfied its SEQRA obligations. It is black letter law that a court's review of a SEQRA determination is deferential (see Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d at 416; Matter of Town of Beekman v Town Bd. of the Town of Union Vale, 219 AD3d 1430, 1432-1433 [2d Dept 2023]).
The Planning Board's findings and determinations were made after holding public hearings and after reviewing, among other things, a full environmental assessment form (EAF) that was later revised; copies of the visual impact assessment; the decommissioning plan; the developer's application materials; several reports prepared by the developer and its expert consultants, an EAF narrative prepared by the developer's engineer; the revised Stormwater Pollution Prevention Plan (SWPPP); a study about glares from solar panels; a tree disposal plan; a tree survey containing revised methodology for tree disposal to existing vegetation in an environmentally-friendly manner; a report submitted by the public thoroughly reviewing the proposed project; and several reports and studies on the impact that operation of a major solar facility would have on surrounding residential homes.
Following its review here, the Planning Board issued a lengthy negative declaration that include a detailed description of the actions to be taken, reasons supporting the Planning Board's determinations, and an evaluation of the areas of relevant environmental concern, incorporating therein a full environmental assessment form (EAF) that was subsequently modified, as well as various materials, reports, and information it had considered.
The areas of concern addressed by petitioners were identified in the EAF and/or specifically referenced in the negative declaration. Viewing the administrative record in its totality, the Court finds that it contains sufficient data to support the Planning Board's determination that the proposed solar project would not have a significant effect upon the environment.
Contrary to petitioners' claim, the Planning Board did not violate SEQRA. The determinations outlined in the negative declaration are not arbitrary or capricious, nor affected by an error of law, because the Planning Board identified the appropriate environmental concerns, took a hard look at their impact, and provided reasoned explanations for its negative SEQRA declaration. As such, the Court concludes that a rational basis exists for the negative declaration at issue.
The Court also finds that the Planning Board followed the procedural and substantive requirements of SEQRA by rendering a negative declaration in connection with the solar project. In this regard, 6 NYCRR 617.7 (c) (1) provides a nonexhaustive list of "indicators" to assess whether proposed type I and unlisted actions may have a significant adverse impact on the environment. Examples of such include, among other things, substantial changes in noise levels, [*9]impacts to natural resources and wildlife, material conflicts with a community's plans or goals, a major change in the use of either the quantity or type of energy, and the creation of hazards to human health (see 6 NYCRR 617.7 [c] [1] [i], [ii], [iv], [vi], [vii]).
Public hearings were held, additional workshop meetings were also held, and numerous public comments were submitted — to which the Planning Board responded extensively and addressed various concerns. Among other things, the Planning Board identified multiple permitting conditions that were necessary to ensure adverse environmental impacts were avoided or minimized, thereby making its review akin to one that is conducted under SEQRA.
Upon a closer review, the Planning Board's resolution contained findings that pointedly addressed aspects of the Town's zoning ordinances and Local Law No. 3. In reviewing the site plan proposal and issuing the special use permit, the Planning Board specifically found that the solar project was in harmony with the Town's comprehensive plan and would help address the causes of climate change by promoting the use of renewable energy in producing electricity. More to that point, the Planning Board found that a Tier 3 solar facility will contribute to the State's goal of replacing fossil fuel generated electricity by producing solar energy while contributing to a cleaner and greener energy future, and providing additional electricity services that efficiently meets the needs of Town residents.
Notwithstanding, petitioners urge that clearing 29.7 acres of mature forest for the installation of solar panels and hindering vegetation preservation are significant adverse impacts requiring a positive declaration, which was overlooked by the Planning Board. According to petitioners, failure to issue a positive declaration was error because issuing a positive declaration would not have doomed the project. Petitioners' assertions in this respect, however, are unpersuasive.
The Planning Board acknowledged that the proposed action could result in increased erosion from physical disturbance of vegetation by removing 29.7 acres of vegetation (including forest land) from the property to facilitate construction of the solar panels. However, it found that any potential impacts from erosion would be fully mitigated. In reaching that finding, the Planning Board specifically determined that the developer's proposed mitigation measures, inclusive of erosion and sediment inspections, would sufficiently monitor compliance, there would be a minimization of grading activity, and avoiding usage of herbicidal treatments during construction and operation would have little to no impact on the land area. The developer was therefore directed to modify the site plan to avoid existing mature trees in the southeast area of the property so that approximately 70 acres of forested area outside the project site could be conserved.
Additionally, the Planning Board determined that there would be no adverse impact on neighboring properties, human health, historical or archaeological resources, the ground water, wetlands, or other water sources on the area. The Planning Board also found there would be little to no impact on traffic control, lighting, noise, aesthetic and agricultural resources, plants, animals, as well as the stormwater and surface water.
As to petitioners' concerns about increased stormwater runoff, the Planning Board required a SWPPP to adequately address any concerns pertaining to stormwater management. In that regard, the Planning Board observed that the site plan provided that all stormwater runoff management features would be designed to capture 100% of the runoff from the proposed impervious areas and found that minimal construction on steep slopes in excess of 15% grade would not result in any stormwater management or erosion concerns. The Planning Board's [*10]review process demonstrates that it identified and took a hard look at the stormwater issue and made a reasoned determination that the capacity of the existing system was adequate to handle the increase in stormwater runoff (see Matter of Van Dyk v Town of Greenfield Planning Bd., 190 AD3d 1048, 1048-1050 [3d Dept 2021]).
What's more, the Planning Board noted that the solar project is subject to a decommissioning plan, whereby 22 acres and additional meadow habitat would be returned to farmland; there would be a removal of the solar panel steel supports placed into the ground to have the land returned to its pre-solar condition; all areas of the project deemed temporary installations would be restored after decommissioning; and no areas on the site would be irreversibly converted to nonagricultural use. The Planning Board further noted that the entire 172 acres of the area would be placed in a permanent conservation easement to prevent future construction, subdivision, or other development.
The Court adds that the Planning Board could, to some extent, appropriately rely on the negative declaration in areas where it overlapped with the Local Law No. 3 and the objectives aspired to be satisfied in issuing the special use permit (see Town of Pine Plains Zoning Law§ 275-55 [B]; see also Matter of Biggs v Eden Renewables LLC, 188 AD3d at 1546; Matter of Frigault v Town of Richfield Planning Bd., 107 AD3d 1347, 1353 [3d Dept 2013]). To that end, the Planning Board found, as set forth in the negative declaration, that: (1) potential impacts from erosion will be fully mitigated by the developer's proposed mitigation measures; (2) no wetlands or other water sources were identified on the property site; (3) the project site was strategically located so as to have very minimal impact to the aesthetic resources; (4) the tree clearing would not endanger a particular species of bats; (5) a permanent conservation easement would preserve the property against future development; (6) the installation and maintenance of bat boxes on the project site would ensure any adverse direct impact to the bats in the area; and (6) the special use permit would be conditioned upon limiting tree clearing activities between November 1st and March 31st. The Court thus finds petitioners' assailment of the negative declaration to be meritless. 
In view of the foregoing, the Planning Board rationally issued a negative declaration, wherein it made several findings and concluded that the solar project would not result in significant adverse impacts on the environment. The Planning Board was not required to prepare an EIS under SEQRA and appropriately dispensed with preparing one. In reaching this conclusion, the Court finds that the Planning Board gave due consideration to the public's concerns with the solar project and took a careful and hard look at the potential negative environmental impacts associated with constructing a major solar facility on the proposed site.
The undersigned, as a reviewing court, must refrain from substituting its own judgment for that of the Planning Board — an administrative agency which rendered the determinations here. Petitioners' contention that the Planning Board overlooked or disregarded adverse environmental impacts is belied by the lengthy resolution and negative declaration. There was conformance with the standards imposed by the Local Law No. 3 and the Town's zoning ordinances. Accordingly, the Planning Board providently issued the negative declaration in finding "that the environmental impact is not significant" (Matter of Spitzer v Farrell, 100 NY2d 186, 190 [2003]; see ECL§ 8-0109 [4]; 6 NYCRR 617.7 [a] [1]-[2]). Because petitioners failed to demonstrate that the Planning Board's negative declaration pursuant to SEQRA was made in violation of lawful procedure, was affected by an error of law, or was arbitrary and capricious, or an abuse of discretion, their claims as to the negative declaration and [*11]SEQRA must be dismissed (see Matter of Tampone v Town of Red Hook Planning Bd., 215 AD3d 859, 862 [2d Dept 2023]).
VI. Special Use Permit
Next, petitioners fault the Planning Board for issuing the special use permit on several grounds, arguing that its final determination in approving the solar project is arbitrary, capricious, and unsupported by the record, and therefore, it must be annulled. Petitioners argue that the developer did not satisfy the "criteria" that is codified in Town of Pine Plains Zoning Law § 275-55 (B). The Planning Board, on the other hand, maintains that it engaged in an exhaustive review of the application for a special use permit by imposing 27 conditions and that it adequately complied with the procedural and substantive requirements of the Town's zoning ordinances in ultimately approving the solar project.
"A special exception, commonly known as a special use permit, 'gives a property owner permission to use property in a way that is consistent with the zoning ordinance, although not necessarily allowed as of right" (Matter of 7-Eleven, Inc. v Incorporated Vil. of Mineola, 127 AD3d 1209, 1210 [2d Dept 2015], lv denied 26 NY3d 902 [2015], quoting Matter of Retail Prop. Trust v Board of Zoning Appeals of Town of Hempstead, 98 NY2d 190, 195 [2002] [internal brackets omitted]). A special use permit "is tantamount to a legislative finding that the permitted use is in harmony with the general zoning plan and will not adversely affect the neighborhood" (Matter of Retail Prop. Trust v Board of Zoning Appeals of Town of Hempstead, 98 NY2d at 195).
Applicants are required to demonstrate compliance with any legislatively imposed conditions upon the permitted use (see id. at 195). "A local planning board has broad discretion in reaching its determinations, and judicial review is limited to ascertaining whether the challenged action was illegal, arbitrary and capricious, or an abuse of discretion (Matter of Gordon v Planning Bd. of the Town of E. Hampton, 205 AD3d 719, 720 [2d Dept 2022] [emphasis added]; see Matter of Twin County Recycling Corp. v Yevoli, 90 NY2d 1000, 1002 [1997]).
Petitioners' supposition that the Town's zoning ordinance governing a special use permit contains mandatory criteria that require strict compliance is misguided (see Town of Pine Plains Zoning Law § 275-55 [B]). Rather, the ordinance itself states that the Planning Board has wide authority to "prescribe appropriate conditions and safeguards to ensure accomplishment of the [11] objectives" (id. [emphasis added]; see § 275-24 [D] [5]). Indeed, the record here discloses that the Planning Board entertained comments derived from multiple public hearings, including the concerns expressed by petitioners.
Inapposite to petitioners' views, the objectives in the zoning ordinance are, more or less, aspirational and not mandatory criteria. This is a distinction with a difference. Said differently, the Planning Board was not subject to criteria in imposing the appropriate conditions and safeguards in considering the public health, safety, and welfare of citizens of the Town (see Town of Pine Plains Zoning Law § 275-55 [B]).
A reviewing planning board is required to grant a special use permit unless there are reasonable grounds for denying it. In making a finding to issue such permit, so long as the conditions of the zoning ordinance are met, the proposed use is deemed compatible with the standards and objectives of the zoning ordinance and such will not adversely affect the [*12]neighborhood and the surrounding areas (see Matter of Twin County Recycling Corp. v Yevoli, 224 AD2d 628, 628 [2d Dept 1996], affd 90 NY2d 1000 [1997]). That's what occurred here. The Planning Board was free to consider any matters related to the public health, safety, and welfare in determining whether to grant or deny the developer's special use permit. The Planning Board engaged in earnest efforts in trying to address community concerns before reaching its final determination.
When, as here, a municipality's determination of an application for a special use permit has a rational basis and is supported by the record, this Court must defer to the Planning Board's determination in deciding to issue the special use permit (see id.). The Planning Board's determination to grant the application for the site plan approval and a special use permit have a rational basis and are not illegal, arbitrary and capricious, or an abuse of discretion.
As mentioned, it is not within the province of this Court to second-guess the Planning Board's determinations or substitute its independent judgment. Upon conducting its review, the Planning Board reasonably determined that the requirements for issuing the special use permit were met here (see Matter of Gordon v Planning Bd. of the Town of E. Hampton, 205 AD3d at 720; Matter of Saint James Antiochian Orthodox Church v Town of Hyde Park Planning Bd., 132 AD3d 687, 688 [2d Dept 2015]).
A. Community Character
The Court is compelled, again, to reiterate the governing legal principles given petitioners' various claims and belabor the legal points on well-established precedent. "In reviewing an administrative agency determination, courts must ascertain whether there is a rational basis for the action in question or whether it is arbitrary and capricious. An action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts. If the court finds that the determination is supported by a rational basis, it must sustain the determination even if the court concludes that it would have reached a different result than the one reached by the agency. Further, courts must defer to an administrative agency's rational interpretation of its own regulations in its area of expertise" (Matter of Peckham v Calogero, 12 NY3d 424, 431 [2009] [internal quotation marks, brackets, and citations omitted]).
The Court also reemphasizes the fundamental legal tenet that municipal land use agencies, like the Planning Board, have broad discretion in deciding whether to grant a special use permit, irrespective of scientific or expert evidence (see Matter of Metro Enviro Transfer, LLC v Village of Croton-on-Hudson, 5 NY3d 236, 240-241 [2005]). And importantly, a planning board may not deny a special use permit based "solely on community objection" (Matter of Retail Prop. Trust v Board of Zoning Appeals of Town of Hempstead, 98 NY2d at 196; accord Matter of Biggs v Eden Renewables LLC, 188 AD3d at 1548). "If there are specific, reasonable grounds for the municipality to conclude that the proposed special use is not desirable at the particular location, then the permit may properly be denied even though the statutory requirements for the special use are met" (Matter of Steenrod v City of Oneonta, 69 AD3d 1030, 1031 [3d Dept 2010]). 
Here, the Planning Board's determination granting the special use permit is consistent with its own rules, precedents, and evaluation. Thus, there is a rational basis for the determination. As evinced by the vast record, the Planning Board complied with the Town's [*13]zoning ordinances and Local Law No. 3 in deciding to issue the special use permit. 
Of note, the Planning Board imposed comprehensive conditions upon the special use permit to ensure compliance with the 11 objectives set forth in the Town's zoning ordinances (see Town of Pine Plains Zoning Law § 275-55 [B]). All things considered, the record evinces that the reasons provided by the Planning Board in granting the application for a special permit are supported by factual data and empirical evidence. The material findings and determination of the Planning Board are buttressed by the record. The Planning Board rationally concluded that operation of a major solar facility at the project site would not have an undesirable effect on the community character, would not adversely impact physical or environmental conditions, nor would it otherwise result in a detriment to the health, safety, and welfare of the surrounding neighborhood or community.
Petitioners nevertheless object to the construction of the solar project due to concerns of negative visual impact and the reduction of real property values in the adjoining properties. The Planning Board, however, had ample evidence to support its determination that these impacts would be minimized based on the developer's proposals to address the concerns.
After a site plan visit in December 2022 where members of the Planning Board observed that some residential homeowners may have partial views of the southeast corner of the solar project where no visible buffer exists, the Planning Board imposed the appropriate measures by adjusting the location of the solar panels to minimize visual impact. Although the Planning Board identified that the solar project could have a small impact on the character of the community, it ultimately determined that such would be insignificant and minimized by installing the solar panels in less visible areas of the project site — which would be almost completely covered by existing vegetation and topography, as well installing supplemental vegetative screening to the existing forested areas. Those actions were reasonable "[t]o further shield the community's view of the [solar] project" (Matter of Biggs v Eden Renewables LLC, 188 AD3d at 1548).
After holistically examining the evidence before it, the Planning Board concluded that a large-scale solar facility would not have a significant adverse visual impact on the community. This conclusion was based on, among other things, a visual assessment survey prepared by an expert on behalf of the neighboring property owners wherein the expert conceded a lack of visual and aesthetic impact from the solar project, and a comprehensive visual analysis prepared by the developer's expert. The Planning Board found that the completed project would not be readily visible from public roads adjacent to the facility based on the developer's redesigns.
The Planning Board further found that any concern about potentially reflecting glare from the solar panels was adequately addressed through a study that extensively analyzed the use of anti-glare coating which would, in turn, ensure no glare impacts in the surrounding areas, and an unlikelihood that glaring from the solar panels would be problematic. In this respect, the Town's zoning ordinance required that all solar panels shall have anti-glare coating (see Town of Pine Plains, Zoning Law § 275-24 [D] [7]). In acknowledging that the solar project may differ in architectural scale and character from the surrounding rural natural landscape, the Planning Board reasoned that its lack of visibility from public vantage points and its close proximity to an electricity power substation would not detrimentally affect the overall community character. Were this Court to conclude otherwise, the undersigned would be inappropriately substituting his own personal judgment.
[*14]B. Property Values
Petitioners also claim that the Planning Board relied heavily on self-serving studies submitted by the developer concerning the effect of solar facilities on surrounding residential properties, and disregarded the robust unbiased academic study proffered on behalf of petitioners — the latter concluding that all solar facility projects diminish property values of 3.1% for homes within a 0-0.5 mile radius for real property transactions of homes that are situated near larger scale solar facilities. For the same reasons outlined above, petitioners' contention in this regard is similarly unavailing.
The Planning Board found that the solar project would have no demonstrable negative impact on the property values of nearby residences upon reviewing the empirical evidence, noting that petitioners supplied conclusory, non-expert opinions. The Planning Board reasoned that a solar facility's impact on neighboring property values is largely dependent upon the visual impacts.
The Planning Board rationally concluded that there would be no visual negative impacts resulting from the solar project and, as a result, there would be no diminished value of the surrounding properties because the solar panels would be installed and located in the least visible area of the subject property. Moreover, the study relied on by petitioners examined other states — namely, California, Massachusetts, Minnesota, North Carolina, New Jersey, Connecticut — not New York. And critically, the study that is heavily relied on by petitioners found that there was "no effect on sales prices" for residential homes neighboring a solar facility in Connecticut or Massachusetts (NYSCEF Doc No. 28 at 13).
The developer additionally points out that the Town Attorney represented at a board meeting in September 2023 that imposing a permanent conservation easement would increase property values — which has not been discounted or contradicted by petitioners. The foregoing provides a rational basis for the Planning Board's determination that the community character of the area and the real property values would be reasonably safeguarded (see Matter of Biggs v Eden Renewables LLC, 188 AD3d at 1548-1549; see also 6 NYCRR 617.7 [a] [2]).
Further, as the developer correctly contends, the Planning Board could credit and rely upon the professional opinions of its own consultant and the developer's experts, and reject the studies offered by petitioners, especially where, as here, there were indefinite or conflicting conclusions (see Matter of Ball v New York State Dept. of Envtl. Conservation, 35 AD3d 732, 733 [2d Dept 2006]). "[C]ourts have allowed . . . local lead agencies considerable latitude in the exercise of discretion on substantive environmental matters" (Matter of Winston v Freshwater Wetlands Appeals Bd., 254 AD2d 363, 364 [2d Dept 1998], lv denied 93 NY2d 806 [1999]). "The choice between [weighing] conflicting expert [evidence] rests in the discretion of the administrative agency" (Matter of Brooklyn Bridge Park Legal Defense Fund, Inc. v New York State Urban Dev. Corp., 50 AD3d 1029, 1031 [2d Dept 2008], lv denied 10 NY3d 714 [2008]).
In this matter, the Planning Board's review process was conducted over an extended period of time. That entailed the involvement of professional consultants from a myriad of specific disciplines, as well as the Town's own professional consultants. The public hearings addressed a multitude of concerns. The Planning Board took its time and ensured that all matters were addressed before moving forward with the solar project. Notably, the evidence presented to the Planning Board regarding potential diminishment of property values was not so sharply [*15]conflicting. The findings were indeterminate. Because the Planning Board ultimately chose to rely on the conclusions of its experts does not render its determination arbitrary, capricious, or lacking in a rational basis (see Matter of Seven Acre Wood St. Assoc. v Town of Bedford, 302 AD2d 532, 533 [2d Dept 2003]; Matter of Winston v Freshwater Wetlands Appeals Bd., 254 AD2d at 364). In addressing petitioners' claim, the Planning Board found no evidence of decreased real property values to neighboring properties, that the visual impacts of the solar panels would be minimal, and the research presented by petitioners was speculative or inconclusive. The Planning Board reasonably concluded that a decrease in neighboring property values was speculative or inconclusive since petitioners had not presented any concrete expert evidence in connection thereto; and instead, merely relied upon a study that was devoid of analyzing real property value impacts from solar projects in New York State. On the record before it, no determination can be made that the value of the properties would be impaired (cf. Matter of Fischlin v Board of Appeals of Town of Philipstown, 176 AD2d 50, 52 [3d Dept 1992]).
In light of the Court's findings and determinations herein, the Planning Board's first and fifth affirmative defenses (failure to state a cause of action and that its actions were not arbitrary or capricious and are amply supported by the record evidence, respectively) must be sustained. Likewise, the developer's virtually identical defenses in its answer and objections in point of law are likewise sustained (NYSCEF Doc Nos. 114, 115, answers).
All in all, the record reveals that the Planning Board addressed petitioners' many concerns. Notwithstanding, it seems that the essence of petitioners' challenge to the project is the mere existence of a solar facility in the area, not its compatibility or suitability. However, the Court stresses that the Planning Board could not outright deny the permit solely on the basis of generalized objections and concerns of community pressure by petitioners who are part of the neighboring or adjoining community (see Matter of Biggs v Eden Renewables LLC, 188 AD3d at 1548-1549; Matter of Twin County Recycling Corp. v Yevoli, 224 AD2d at 629).
The Planning Board did not otherwise act arbitrarily or capriciously based upon this Court's review of the voluminous record before it. The Court holds that the Planning Board's determination granting the developer's request for a special use permit is supported by a rational basis. Therefore, the Planning Board's determinations in issuing the negative declaration and special use permit are confirmed (see Matter of Biggs v Eden Renewables LLC, 188 AD3d at 1548-1549).
VII. Request for Attorneys' Fees & Costs
Lastly, petitioners' request for an award of attorneys' fees, costs, and disbursements must be denied. First, petitioners did not prevail in this proceeding. Even if they had, "[a] prevailing party is not entitled to have his attorney's fees paid by the loser unless such an award is authorized by agreement between the parties, statute, or court rule" (Clelland v Lettro, 15 AD3d 874, 875 [4th Dept 2005]; see Chapel v Mitchell, 84 NY2d 345, 348-349 [1994]). Petitioners pointed to no agreement or statute that would entitle them to attorneys' fees in instituting this proceeding (see e.g. Falanga v Town of Farmington, 74 Misc 3d 1234[A] at *9).
To the extent that the Planning Board and the developer both request an award of costs and disbursements in their respective answers, the relief sought in that regard is denied. Respondents failed to establish that the underlying litigation "is completely without merit in law [*16]and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law" (22 NYCRR 130-1.1 [c] [1]); or was "undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another" (22 NYCRR 130- 1.1 [c] [2]). Moreover, neither the Planning Board nor the developer asserted a counterclaim for costs and attorneys' fees (cf. Matter of Violet Realty, Inc. v City of Buffalo Planning Bd., 20 AD3d 901, 904 [4th Dept 2005], lv denied 5 NY3d 713 [2005]).
VIII. Conclusion
The Court finds that the Planning Board took a hard look at the relevant areas of environmental concern and made a reasoned elaboration of the basis for its determination that the solar project would not result in a significant adverse impact to the surrounding community. The Planning Board fulfilled its legal duties with respect to its findings. Its determinations issuing the negative declaration and the special use permit are so confirmed.
Accordingly, petitioners are thus not entitled to any relief sought, including the request for injunctive relief. The petition must be denied, the proceeding dismissed, and judgment entered in favor of respondents (see Matter of Biggs v Eden Renewables LLC, 188 AD3d at 1548-1549; Matter of Affiliated Brookhaven Civic Orgs., Inc. v Planning Bd. of the Town of Brookhaven, 209 AD3d 854, 854-855 [2d Dept 2022]; see also Falanga v Town of Farmington, 74 Misc 3d 1234[A], *3-9 [Sup Ct, Ontario County 2021]; Matter of Shoreham Wading Riv. Advocates for Justice v Town of Brookhaven Planning Bd., 2015 NY Slip Op 31444[U], *9-13 [Sup Ct, Suffolk County 2015]).
Petitioners' remaining contentions, to the extent not specifically addressed herein, have been evaluated and determined to be without merit. It is hereby:
Ordered, Adjudged, and Decreed that the first amended petition is DENIED and DISMISSED in its entirety; and it is further
Ordered that this proceeding is dismissed.
This memorandum constitutes the decision, order, and judgment of the Court.[FN5]

Dated: June 4, 2024
Carmel, New York
E N T E R:
______________________________
HON. ANTHONY R. MOLÉ
Acting Justice of the Supreme Court

Footnotes

Footnote 1:This matter was transfer and reassigned to Supreme Court, Putnam County until disposition by way of an administrative Order issued by the Administrative Judge of the Ninth Judicial District (see NY St Cts Elec Filing [NYSCEF] Doc No. 67, order).

Footnote 2:A partial discontinuance was filed against the prior owners who were named as corespondents, thereby removing them from this proceeding as unnecessary parties.
Footnote 3:The Court takes judicial notice of all filings in this proceeding on the New York State Courts Electronic Filing System ("NYSCEF") (see Kazantzis v Cascade Funding RM1 Acquisitions Grantor Trust, 217 AD3d 410, 411 [1st Dept 2023]).

Footnote 4:After all, improper joinder and personal jurisdiction are waivable objections that do not implicate the merits of this proceeding.

Footnote 5:Proper notice of entry should be made in accordance with the CPLR.