OPINION OF THE COURT
 

 Ciparick, J.
 

 In March 1999, respondent Board of Zoning Appeals of the Town of Hempstead denied a request by petitioner Retail Property Trust (RPT) for a special exception to expand the structure and parking facilities on its property, the Roosevelt Field Shopping Mall, in order to accommodate a Saks Fifth Avenue department store. RPT then commenced this CPLR article 78 proceeding to annul the determination of the Board. After finding substantial evidence to support the conclusion that the proposed mall expansion would adversely affect traffic and air quality, Supreme Court denied the application and dismissed the petition. The Appellate Division reversed, finding the decision of the Board to be dictated solely by community opposition and thus arbitrary and capricious. We granted leave to appeal (97 NY2d 607 [2001]) and now conclude that the determination of the Board was supported by substantial evidence.
 

 Roosevelt Field Shopping Mall is located in the Town of Hempstead near the border of intervenor Incorporated Village of Garden City. The mall, situated on approximately 110 acres, is located in a “Y Industrial District,” in which a shopping mall and parking structures are permitted uses. In 1989, however, the Town Board adopted a maximum floor area ratio, or “FAR,” in various districts, including Y Industrial Districts, that limited the total floor area of any building to four tenths (0.4) of the total land area.
 
 *
 
 The purpose of limiting building expansion in these districts was “to strike a better balance between economic growth and the preservation of [the] Town’s precious natural environment” and to protect the Town from the deleterious effects of overdevelopment (Comments of Presiding Supervisor Mondello, Hempstead Town Board Meeting, Mar. 14, 1989). The Building Zone Ordinance was also amended to
 
 *193
 
 allow the Board of Zoning Appeals to permit a FAR in excess of 0.4, subject to enumerated conditions, and after public notice and hearing
 
 (see
 
 Building Zone Ordinance, art XXVII, § 267 [D]; § 272). Because the mall already had a FAR of 0.529 at the time of the enactment, it immediately became a preexisting nonconforming use.
 

 By 1998, when RPT applied for the special exception at issue here, the mall had a square footage of 3,217,395 and a FAR of 0.696, having already been granted a special exception in 1995 to build additional retail space and parking structures in order to accommodate a Nordstrom’s department store. Under the proposed 1998 plan, an additional 184,000 square feet of retail space and 187,000 square feet of parking space would be added to the mall, bringing its total square footage to 3,588,395 and its FAR to 0.75, nearly twice that permitted by ordinance.
 

 Under Town of Hempstead Building Zone Ordinance, article XXVII, § 267 (D), the Board of Zoning Appeals may permit a special exception to a permitted but limited use provided that the proposed use (1) will not prevent the orderly and reasonable use of adjacent properties or properties in adjacent districts; (2) will not prevent the orderly and reasonable use of permitted or legally established uses in the district or adjacent districts; (3) will not adversely affect the safety, health, welfare, comfort, convenience or order of the town; and (4) will be in harmony with and promote the general purposes and intent of the zoning ordinance. The ordinance goes on to provide an illustrative, as opposed to exhaustive, list of considerations relevant to these requirements, including the effect that the proposed use may have on vehicular traffic congestion.
 

 As required by the Building Zone Ordinance, public hearings were held in February and March 1999. RPT introduced a report entitled “Traffic Impact Study” prepared by VMI/Maris, a traffic and parking consultant, predicting that the proposed expansion would increase vehicular traffic in the area of the mall by about one percent during peak evening hours and by about two percent on peak Saturday hours. According to the report and testimony by the consultant, the additional traffic would have minimal impact on traffic conditions in the area of the mall.
 

 RPT also presented an “Air Quality Study” prepared by a private engineering firm, Henderson and Bodwell, concluding that there would be little effect on air quality as a result of the expansion. Supporting this report was a letter from the New
 
 *194
 
 York State Department of Environmental Conservation agreeing with the conclusions reached in the study.
 

 Objectors to the proposed mall expansion, including intervenor Village of Garden City, which operates a school near the mall, introduced their own expert report (the Salatti Report) in response to RPT’s expert traffic report. The Salatti Report highlighted a number of concerns with RPT’s traffic study, such as the failure to consider additional traffic yet to be generated by already approved land development projects in the area and future “as of right” building, as well as the use of overly optimistic assumptions about traffic patterns. In addition, the report disputed the characterization of additional traffic created by the proposed expansion as “de minimis” in light of the fact that the roads servicing the mall were already operating at or near capacity, causing drivers to seek “congestion relief’ by using secondary roads running through residential areas, primarily in the Village of Garden City. Thus, in the imagery of the Salatti Report, even a drop in an already full bucket would cause the bucket to overflow.
 

 The objectors also introduced, and their expert relied upon, the “Nassau Hub Study.” The study, not prepared in connection with the mall expansion, is a comprehensive report of traffic and transportation issues and forecasts for the Nassau County Hub area, which includes the Roosevelt Field Shopping Mall. Authored by a group of government and academic authorities, the study paints a detailed picture of the transportation challenges facing one of the most densely populated areas in the country. The objectors used the Hub Study to illustrate how even a minimal traffic increase created by mall expansion could have far-ranging effects in the area.
 

 In its notice of decision, the Board noted that the area around the mall was oversaturated and in need of future growth control given that the area surrounding the mall contained a high density of shopping venues and had potential for even more “as of right” development. The Board further observed that past mall development had already affected the health, safety, comfort and welfare of surrounding communities. With respect to the traffic situation, the Board determined that RPT’s expert did not adequately address the effect of even a minuscule increase in traffic on the already existing traffic problems in the area or future increases anticipated by the Nassau Hub Study. Crediting the objectors’ expert, the Board also found fault with some of the methodology employed by RPT’s expert, and expressed concern about the impact of fur
 
 *195
 
 ther mall expansion on air quality in the area. Taking all the factors into consideration the Board denied RPT’s request.
 

 Supreme Court found that there was a rational basis for the Board’s determination and sufficient evidence to support the conclusion by the Board that nearby properties, such as intervenor Village of Garden City’s school, would be negatively affected by the expansion and that the increased traffic generated by the expansion would adversely affect the health, safety, comfort and convenience of neighboring properties. The Appellate Division reversed, concluding that, although there was “strong community opposition” to the expansion, the Board’s findings with respect to increased noise and traffic, and diminished air quality, were not supported by substantial evidence. Specifically, the Court found that the opinions of the objectors’ experts were not supported by empirical data and, thus, insufficient to rebut the opinions of RPT’s experts which were based on traffic and air quality analyses.
 

 Because both petitioner’s and objectors’ experts in this case provided authoritative reports amounting to substantial evidence regarding the proposed expansion, we conclude that the determination of the Board of Zoning Appeals must be upheld. The Board’s decision was both rational and supported by substantial evidence.
 

 Unlike a variance which gives permission to an owner to use property in a manner inconsistent with a local zoning ordinance
 
 (see Matter of Ifrah v Utschig,
 
 98 NY2d 304 [decided today]), a special exception gives permission to use property in a way that is consistent with the zoning ordinance, although not necessarily allowed as of right. The significance of this distinction is that the “inclusion of the permitted use in the ordinance is tantamount to a legislative finding that the permitted use is in harmony with the general zoning plan and will not adversely affect the neighborhood”
 
 (Matter of North Shore Steak House v Board of Appeals of Inc. Vil. of Thomaston,
 
 30 NY2d 238, 243 [1972] [citations omitted]). Thus, the burden of proof on an owner seeking a special exception is lighter than that on an owner seeking a variance, the former only being required to show compliance with any legislatively imposed conditions on an otherwise permitted use, while the latter must show an undue hardship in complying with the ordinance
 
 (see id.
 
 at 244;
 
 see also Matter of Wegmans Enters. v Lansing,
 
 72 NY2d 1000, 1001 [1988]). Failure to comply with any condition upon a special exception, however, is sufficient ground for denial of the exception.
 

 
 *196
 
 While a zoning board of appeals retains discretion to deny a special exception for failure to comply with a legislative condition, such a determination must nonetheless be supported by substantial evidence
 
 (see Matter of Twin County Recycling Corp. v Yevoli,
 
 90 NY2d 1000, 1002 [1997]). Even where no expert testimony is presented, a zoning board may not base the denial of a special exception solely on community objection
 
 (see id.).
 
 Moreover, expert opinion regarding traffic patterns, when presented, may not be disregarded in favor of generalized community opposition
 
 (see Matter of Market Sq. Props. v Guilderland Zoning Bd. of Appeals,
 
 66 NY2d 893, 895 [1985]). However, where there are other grounds in the record on which to base denial, such as contrary expert opinion regarding traffic conditions, deference must be given to the discretion and commonsense judgments of the board.
 

 As with board determinations on variances, a reviewing court is bound to examine only whether substantial evidence supports the determination of the board. Where substantial evidence exists, a court may not substitute its own judgment for that of the board, even if such a contrary determination is itself supported by the record
 
 (see Matter of Toys “R” Us v Silva,
 
 89 NY2d 411, 423 [1996]).
 

 In this case, it appears that the Appellate Division substituted its own judgment for the contrary but equally reasonable determination of the Board of Zoning Appeals. That action was an incursion on the discretion of the Board and cannot be justified where substantial evidence in the record supports the Board’s determination. Although there was strong community opposition to the proposed expansion, that fact merely provides the backdrop for the dispute; it does not define the quality of the evidence presented. Through the reports of objectors’ traffic and air quality experts, the opposition presented valid scientific bases for rejecting the expansion plan, which the Board in its discretion was authorized to credit. The evidence in this case presented a close, fact-specific choice of the kind that local boards are uniquely suited to make. Giving the Board of Zoning Appeals the deference to which it is entitled under such circumstances, we conclude that it acted rationally and with the support of substantial evidence in denying petitioner’s application for a special exception permit.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to that Court for consideration of issues raised but not determined on the appeal to that Court.
 

 
 *197
 
 Chief Judge Kaye and Judges Smith, Levine, Wesley, Rosenblatt and Graffeo concur.
 

 Order reversed, etc.
 

 *
 

 Under Town of Hempstead Building Zone Ordinance, article I, § 1, floor area ratio is defined as the “ratio of the floor area of a building or buildings in square feet to the lot area of the building site in square feet. For purposes of a special exception under Article XXVII, ‘floor area ratio’ shall be considered a use.”