5 N.Y.3d 236 (2005)
833 N.E.2d 1210
800 N.Y.S.2d 535
In the Matter of METRO ENVIRO TRANSFER, LLC, Appellant,
v.
VILLAGE OF CROTON-ON-HUDSON et al., Respondents.
Court of Appeals of the State of New York.
Argued June 8, 2005.
Decided July 6, 2005.
*237 Zarin & Steinmetz, White Plains (David S. Steinmetz, Daniel M. Richmond and Jody T. Cross of counsel), for appellant.
Arnold & Porter LLP, New York City (Michael B. Gerrard and Richard Webster of counsel), for respondents.
*238 Donna M.C. Giliberto, Albany, for New York State Conference of Mayors and Municipal Officials, amicus curiae.
Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, GRAFFEO, READ and R.S. SMITH concur.

*239 OPINION OF THE COURT
ROSENBLATT, J.
The question in this appeal is whether a village board's decision not to renew a special use permit was supported by substantial evidence. We hold that it was.
In 1998, Croton-on-Hudson's Village Board of Trustees approved a three-year special use permit for a solid waste transfer facility operated by Metro Enviro, LLC.[1] The permit contained 42 special conditions, including capacity limitations. Other conditions included delineating types of waste that were not allowed in the facility and specifying training required of facility personnel.
Over the three-year period covered by the permit, Metro repeatedly and intentionally violated conditions of the permit. Metro not only exceeded capacity limitations at least 26 times, but also falsified records by rigging software to reallocate the dates of waste intake, deceptively giving the impression that there were no excesses. Further, on at least 42 occasions, the operators accepted prohibited types of industrial waste. Other violations included the inadequate training of facility personnel, insufficient record keeping and inappropriate storage of tires on the site.
Undeniably, there is overwhelming proof of these violations. Indeed, Metro admitted them. It paid fines in connection with several violations and, as a direct result of its capacity excesses, lost its bid to increase the facility's capacity.
In March 2001, Metro applied to renew the permit, due to expire in May 2001. The Board granted more than 10 temporary extensions and held extensive hearings in which it heard evidence and opinion testimony for and against renewal. Metro presented extensive sworn expert testimony and submitted additional written evidence and legal arguments. On January 27, 2003, the Board voted not to renew the permit.
*240 The Board released a 14-page statement of findings detailing its rationale, including a three-page chart summarizing Metro's violations. In its statement, the Board credits the report of the Village's consultant, in whose opinion the violations were substantial. He concluded they "signify a facility that continually promises to improve but nonetheless persistently violates regulations that are designed to protect health and the environment." The Board's statement reflects its doubts about Metro's credibility and its concern that Metro had not been forthright in its dealings with the Village. The Board expressed a belief that, but for a federal monitor's presence, Metro might have concealed information about its operations.
Seeking to annul the Board's decision, Metro brought this CPLR article 78 proceeding. Supreme Court granted the petition, reasoning that the Board's decision was "impermissibly based, in part, upon generalized opposition, which remains uncorroborated by any empirical data." The Appellate Division reversed and dismissed Metro's petition, concluding that Supreme Court "erroneously substituted its own judgment for that of the Village" (7 AD3d 625, 627 [2d Dept 2004]). We granted Metro leave to appeal to this Court, and now affirm.
Metro argues that because it has admitted its violations, paid fines and taken action to conform with the permit conditions in the future, the Board was wrong in denying renewal of the special permit. In essence, Metro asserts that to justify nonrenewal, the Board must show substantial evidence not only of violations, but of violations that actually harmed or endangered health or the environment. We disagree. Although inconsequential violations would not justify nonrenewal, the many violations here, and their willful nature, sufficiently support the Board's decision.
In Matter of Twin County Recycling Corp. v Yevoli (90 NY2d 1000, 1002 [1997]), we recognized that a board is not without discretion in deciding whether to grant a special use permit.[2] Scientific or expert evidence is not necessary, but a board may not base its determination on "generalized community objections" (id.). In Matter of Market Sq. Props. v Town of Guilderland Zoning Bd. of Appeals (66 NY2d 893, 895 [1985]), we held that "expert opinion . . . may not be disregarded in favor of *241 generalized community objections," but nevertheless affirmed the board's denial of a special use permit because there were other grounds in the record.[3] The same principle applies to renewal of a special use permit. This is not to say that denials and nonrenewals may always be based on identical grounds. Where a facility is already in operation and its owner has made an investment, the board should take those facts into account. That said, the board's decision remains a discretionary one that will not be overturned if it has a proper basis.
As the Appellate Division correctly explained, the Board did not have to show substantial evidence of actual harm. It is enough that the Board found the violations potentially harmful.[4] Here, Metro claims that none of the violations in question created a significant threat of harm. But even if no single violation was dangerous in itself, the Board was entitled to conclude that the history of repeated, willful violations created an unacceptable threat of future injury to health or the environment.
There may, of course, be instances in which an applicant's violation is so trifling or de minimis that denying renewal would be arbitrary and capricious. In this case, however, the Board reviewed volumes of evidence and opinions from both Metro's expert and its own. Metro's expert said the violations were inconsequential. The Board's expert, however, stated, and the Board was entitled to conclude, that despite Metro's assurances that it would comply, the facility persistently violated permit conditions designed to protect health and the environment. The Board weighed the evidence and concluded it "[could] no longer rely" on Metro's assurances of future compliance. A reviewing court "may not substitute its own judgment for that of the board, even if such a contrary determination is itself supported by the record" (Matter of Retail Prop. Trust v Board of Zoning Appeals of Town of Hempstead, 98 NY2d 190, 196 [2002]). Here, the quantity and character of Metro's violations would have *242 constituted sufficient grounds to deny Metro's renewal application on their own, with or without expert testimony.
Accordingly, the Appellate Division's order should be affirmed, with costs.
Order affirmed, with costs.
NOTES
[1] Metro Enviro, LLC is an entity distinct from appellant Metro Enviro Transfer, LLC. Metro Enviro Transfer acquired Metro Enviro's assets in March 2000.
[2] See also 2 Anderson, New York Zoning Law and Practice § 24.15, at 294 (3d ed 1984) (boards apply "common-sense judgments" to resolve special use permit disputes).
[3] In this realm, board determinations are not popularity contests and will be set aside on judicial review when based solely on generalized community opposition. Conversely, if a board determination is based on substantial evidence, it would be perverse for a court to vacate it merely because the community opposed the proposal. Here, where the Board had substantial evidence for its determination, the courts need not look to the role of community opposition to (or support for) the permit renewal.
[4] See e.g. Matter of Atlantic Cement Co. v Williams, 129 AD2d 84, 88 (3d Dept 1987) ("Generally, in the absence of a material change in conditions or evidence of a violation of the terms of the permit, a renewal should be granted").