Matter of Smith v Town of Thompson Planning Bd. (2024 NY Slip Op 06085)

Matter of Smith v Town of Thompson Planning Bd.

2024 NY Slip Op 06085

Decided on December 5, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 5, 2024

CV-23-0455
[*1]In the Matter of Chester Smith et al., Appellants,
v
Town of Thompson Planning Board et al., Respondents.

Calendar Date:September 9, 2024

Before:Clark, J.P., Pritzker, Ceresia, Fisher and Mackey, JJ.

Steven N. Mogel, Monticello, for appellants.
Law Office of Michael B. Mednick, Monticello (Michael B. Mednick of counsel), for Town of Thompson Planning Board, respondent.
Fogel & Brown, PC, Syracuse (Michael A. Fogel of counsel), for Glen Wild Land Company, LLC, respondent.

Ceresia, J.
Appeal from a judgment of the Supreme Court (David M. Gandin, J.), entered February 21, 2023 in Sullivan County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review, among other things, a determination of respondent Town of Thompson Planning Board adopting a negative declaration of environmental significance.
In 2006, a real estate developer sought to build a mixed use residential and commercial development known as the Rock Hill Town Center Project on 560 acres of vacant and wooded property in the Town of Thompson, Sullivan County. The project was to include 1,613 residential units and approximately 60,000 square feet of retail space. Acting as lead agency, respondent Town of Thompson Planning Board conducted an evaluation of the proposed development under the State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]), including completion of a full environmental impact statement (hereinafter EIS), and approved the plan. However, the project ultimately did not move forward, and at some point the property in question was acquired by respondent Glen Wild Land Company, LLC.
Subsequently, in 2020, Glen Wild submitted a proposal to change the previously-submitted plan by eliminating 213 of the residential units and all of the commercial space and replacing them with a two million-square-foot facility, comprised of three buildings and known as Avon Commercial Park. The Planning Board declared this project a type 1 action for SEQRA purposes, retained consultants and scheduled a public hearing. Prior to the hearing, in late 2021, Glen Wild modified its proposal by removing one of the three buildings, reducing the total space from two million to 560,000 square feet and indicating that it no longer intended to develop the remainder of the property. Glen Wild advised that it was modifying the project in order to address then-current market conditions and comments received from the Planning Board, its consultants and the public. Between January and June 2022, the Planning Board held open the public hearing, and also considered reports and correspondence from numerous experts. In June 2022, the Planning Board issued a negative declaration of environmental significance, granted Glen Wild a special use permit and approved Glen Wild's site plan.
Petitioners — property owners in the Town of Thompson — thereafter commenced the instant proceeding pursuant to CPLR article 78 to annul the Planning Board's determinations, contending that they were unlawful, arbitrary and capricious. Following respondents' answers, Supreme Court dismissed the petition, prompting this appeal by petitioners.
Petitioners argue that the Planning Board improperly failed to refer the project to the Town of Thompson Zoning Board of Appeals (hereinafter ZBA). According to petitioners, a referral to the ZBA was required because it was that body's responsibility to determine whether the project constituted a permitted use or a prohibited [*2]use under the zoning code. More specifically, although Glen Wild represented that the Avon Commercial Park was intended to be a warehouse, which is a permissible use in the zoning district where the property is situated, petitioners claimed that the true purpose of the property appeared to be a distribution center, which is a prohibited use.
We preliminarily note that, as a general rule, the jurisdiction of a zoning board of appeals is appellate in nature (see Town Law § 267-a [4]). Nevertheless, a town possesses the authority to enact a local law or ordinance vesting its zoning board of appeals with original jurisdiction (see Town Law § 267-a [4]), including, for example, to address questions of zoning code interpretation (see e.g. 151 Rte. 17M Assoc., LLC v Zoning Bd. of Appeals of Vil. of Harriman, 19 AD3d 422, 423 [2d Dept 2005], lv denied 6 NY3d 709 [2006]). Here, the Code of the Town of Thompson expressly provides that the ZBA may pass on matters of interpretation as to whether a proposed use is permitted under the zoning code either "[o]n appeal from a[ ] . . . determination made by an administrative official, or on request by an official, board or agency of the Town" (Code of the Town of Thompson § 250-46 [A], available at https://ecode360.com/11125593#11125597 [last accessed Sept. 30, 2024]), the latter option being what was requested by petitioners.
Against that backdrop, pursuant to the zoning code, a warehouse is defined as "[a] building or structure utilized for the storage of various goods," while a distribution center is defined as "[a]n area and building where trucks load and unload cargo and freight, and where the cargo and freight may be transferred to other vehicles or modes of transportation. Storage facilities such as warehouses, incidental to the principal use, may also be part of a distribution center" (Code of the Town of Thompson § 250-2 [B]). That said, Glen Wild's submissions in support of its proposal — in particular, the technical memorandum as well as communications from Glen Wild's attorney and consultants — contain several references to the project as one for "warehouse/distribution" or as "a warehousing/distribution center." The Planning Board and its own engineer also referred to the project as a warehouse/distribution facility. In addition, a certified planner who examined the proposal opined that the number and density of loading docks suggest that distribution is likely the intended principal use. In the face of this information being highlighted by petitioners, Glen Wild proffered a letter from its attorney asserting that the project is, in fact, a warehouse and not a distribution center.
On this record, it is evident that a genuine question exists as to whether the project will fall within a permissible or prohibited use, and the Planning Board improperly resolved this issue on its own. "Planning boards are without power to interpret the local zoning law, as that power is vested exclusively in local code [*3]enforcement officials and the zoning board of appeals" (Matter of Swantz v Planning Bd. of Vil. of Cobleskill, 34 AD3d 1159, 1160 [3d Dept 2006] [citations omitted]; see Matter of Grout v Visum Dev. Group LLC, 197 AD3d 1404, 1407 [3d Dept 2021]; Matter of Catskill Heritage Alliance, Inc. v Crossroads Ventures, LLC, 161 AD3d 1413, 1415-1416 [3d Dept 2018]). As such, the issue should have been resolved either by the local code enforcement officer, or by the ZBA upon referral from the Planning Board (see Code of the Town of Thompson §§ 250-41 [C], 250-46 [A]; see generally Matter of Catskill Heritage Alliance, Inc. v Crossroads Ventures, LLC, 161 AD3d at 1416; Matter of Little v Town of Fabius Zoning Bd. of Appeals, 87 AD3d 1363, 1364 [4th Dept 2011]; Matter of Jamil v Village of Scarsdale Planning Bd., 24 AD3d 552, 553 [2d Dept 2005]; Matter of Uciechowski v Ehrlich, 221 AD2d 866, 868 [3d Dept 1995]).[FN1]
Without an appropriate zoning code interpretation in hand, the Planning Board could not properly issue a special use permit and site plan approval. A special use permit may only be granted when the applicant seeks to use the property in a manner that is expressly allowed in the zoning district (see generally Matter of North Shore Steak House v Board of Appeals of Inc. Vil. of Thomaston, 30 NY2d 238, 243 [1972]; Matter of Hart v Town of Guilderland, 196 AD3d 900, 906-907 [3d Dept 2021]; Matter of QuickChek Corp. v Town of Islip, 166 AD3d 982, 983 [2d Dept 2018], lv denied 33 NY3d 901 [2019]). If it were to be determined that, under the zoning code, the project was more akin to a distribution center as opposed to a warehouse, then Glen Wild would be required to seek a variance rather than a special use permit (see Matter of Retail Prop. Trust v Board of Zoning Appeals of Town of Hempstead, 98 NY2d 190, 195 [2002]). Thus, the special use permit must be vacated, along with the site plan approval that was premised upon the project being classified as a warehouse. Similarly, the Planning Board's negative declaration under SEQRA cannot stand, as the SEQRA review presumed a warehouse project. In light of our ruling herein, petitioners' remaining contentions have been rendered academic.
Pritzker and Mackey, JJ., concur.
Clark, J.P. (dissenting).
We respectfully dissent, as we disagree that the special use permit and site plan approval must be vacated. Specifically, we disagree with the majority's finding that an ambiguity exists as to whether the proposed project is a warehouse or a distribution center, as those terms are defined in the Town of Thompson Zoning Code (hereinafter the zoning code) and, as such, we do not believe that respondent Town of Thompson Planning Board was required to refer the matter to the Town of Thompson Zoning Board of Appeals (hereinafter ZBA).
Briefly, in 2006, a proposal was submitted to turn 560 acres of vacant and wooded land in the Town of Thompson, Sullivan County into 1,613 residential units and 60,000 square feet of retail [*4]space. The Planning Board, as lead agency, completed an evaluation pursuant to the State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]), but that project was abandoned. Thereafter, respondent Glen Wild Land Company, LLC purchased the land and, in April 2021, submitted a proposal to modify the project seeking to eliminate the 213 single-family homes and the entirety of the retail space and replace them with two million square feet of commercial space intended for "warehouse/distribution," located on 560 acres. Then, in November 2021 and December 2021, Glen Wild further revised its site plan application, reducing it to "two warehouse buildings totaling approximately 560,000 [square feet]." Following six months of public hearings, the Planning Board completed its SEQRA evaluation, issued a negative declaration of environmental significance, granted Glen Wild a special use permit and approved the site plan.
Judicial review of a planning board's decision to grant a special use permit and site plan approval is generally limited to "whether [such] a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion" (CPLR 7803 [3]; see Matter of Barnes Rd. Area Neighborhood Assn. v Planning Bd. of the Town of Sand Lake, 206 AD3d 1507, 1510 [3d Dept 2022]). A zoning board sits exclusively as an appellate body, unless a town law or ordinance provides otherwise (see Town Law § 267-a [4]). Pursuant to the Code of the Town of Thompson, "[w]hen a [proposed] use is not specifically permitted . . . by right or by special permit," the ZBA is empowered to determine whether a proposed use "is similar to other uses listed in the [zoning] district and is consistent with the stated purpose of the district" (Code of the Town of Thompson § 250-46 [A] [3]). The ZBA may reach such a determination either on an administrative appeal "or on request by an official, board or agency of the Town" (Code of the Town of Thompson § 250-46 [A]). However, a planning board need not "refer a matter to a zoning board for a superfluous interpretation of an unambiguous provision contained in the zoning code" (Matter of Cady v Town of Germantown Planning Bd., 184 AD3d 983, 986 [3d Dept 2020]; see Matter of Micklas v Town of Halfmoon Planning Bd., 170 AD3d 1483, 1487 [3d Dept 2019]). As relevant here, a warehouse is defined as "[a] building or structure utilized for the storage of various [non-hazardous] goods," while a distribution center is defined as "[a]n area and building where trucks load and unload cargo and freight, and where the cargo and freight may be transferred to other vehicles or modes of transportation," which may include "[s]torage facilities such as warehouses" (Code of the Town of Thompson § 250-2 [B]).
The record reflects that the Planning Board approved the site plan to build a warehouse in a zoning district where such use is allowed with a special use permit, but a distribution [*5]center is not allowed. Petitioners argue — and the majority concludes — that an ambiguity exists as to Glen Wild's proposed use. However, such contention is heavily premised on record references to the April 2021 application rather than the November/December 2021 revised applications. For example, petitioners highlight that the introduction to an August 2021 technical memorandum report, as well as the introduction to the updated October 2021 report, both refer to the relevant portion of the project as "approximately 2,000,000 square feet of warehouse/distribution." While true, we note that those reports pre-date the revised application that the Planning Board approved. Petitioners further rely on an opinion by their certified planner [FN2] that "the number and density of loading docks shown on the site renderings indicates that distribution is likely the principal use proposed on the site."[FN3] Nevertheless, we acknowledge that a review of the record reveals that a December 2021 technical memorandum described the revised application as having scaled back the project to "561,600 square feet of warehouse and distribution space in two warehouse buildings." Such an isolated reference in this hefty record is of little significance, as, following the November/December 2021 revised application, Glen Wild was unwavering in asserting that its proposed use was a warehouse. Indeed, in response to the memorandum prepared by petitioners' certified planner and to the public's concern about zoning, Glen Wild's counsel reasserted "that the applicant is proposing a [w]arehouse and not a '[d]istribution [c]enter' as that term is defined in the [zoning code]." Following six months of public hearings, the Planning Board considered the concerns raised, approved the site plan and granted a special use permit, both of which were expressly conditioned on the proposed use for warehousing, with "[a]ll other uses . . . prohibited without further review and approval by the Planning Board."
Here, the revised application expressly proposed the construction of a warehouse, and the zoning code "enumerates a [warehouse] use as allowed by special use permit, [which] is tantamount to a legislative finding that [such] permitted use is in harmony with the general zoning plan and will not adversely affect the neighborhood" (Matter of Barnes Rd. Area Neighborhood Assn. v Planning Bd. of the Town of Sand Lake, 206 AD3d at 1509-1510 [internal quotation marks and citations omitted]). As the proposed use is expressly allowed by special permit, we do not believe that an ambiguity exists which required the Planning Board to seek the ZBA's interpretation (see Code of the Town of Thompson § 250-46 [A]; Matter of Micklas v Town of Halfmoon Planning Bd., 170 AD3d at 1487; compare Matter of Catskill Heritage Alliance, Inc. v Crossroads Ventures, LLC, 161 AD3d 1413, 1415-1416 [3d Dept 2018]). Further, before issuing the special use permit, the Planning Board reviewed each and every factor specified by the [*6]zoning code, and it set forth the requisite findings (see Code of the Town of Thompson § 250-60 [E]). As such, we would not disturb the Planning Board's "rational determination that the proposed project complied with any legislatively imposed conditions on an otherwise permitted use so as to warrant the issuance of a special use permit and site plan approval" (Matter of Micklas v Town of Halfmoon Planning Bd., 170 AD3d at 1487 [internal quotation marks and citations omitted]; see Matter of Cady v Town of Germantown Planning Bd., 184 AD3d at 986-987).[FN4]
As we would affirm the issuance of the special use permit and the site plan approval, we briefly note that we would also find petitioners' challenge to the negative declaration without merit. "In assessing compliance with the substantive mandates of SEQRA, we are tasked with reviewing the record to determine whether the lead agency identified the relevant areas of environmental concern, took a hard look at them, and made a reasoned elaboration of the basis for its determination" (Matter of Hart v Town of Guilderland, 196 AD3d 900, 903-904 [3d Dept 2021] [internal quotation marks, ellipses and citations omitted]; see Matter of 61 Crown St., LLC v City of Kingston Common Council, 217 AD3d 1144, 1146 [3d Dept 2023]). Here, the Planning Board addressed the potential impact that the project could have on traffic and transportation, greenspace, water sources, wildlife, energy, the character of the community and noise. Following a lengthy process that involved a multitude of studies and an extensive public hearing, the Planning Board addressed the concerns raised and the methods that would be implemented to assuage such concerns. Inasmuch as the record reveals that the Planning Board identified the pertinent areas of environmental concern, took a hard look at said areas and made a reasoned elaboration for its determination to issue a negative declaration, we would find that the Planning Board complied with the requirements of SEQRA (see Matter of Hart v Town of Guilderland, 196 AD3d at 904-914; Matter of Gabrielli v Town of New Paltz, 93 AD3d 923, 924 [3d Dept 2012], lv denied 19 NY3d 805 [2012]). Lastly, as Glen Wild represented that it would move forward only with the construction of a warehouse and abandoned any other aspects it sought previously, we agree with Supreme Court that no impermissible segmentation occurred here (see Matter of PSC, LLC v City of Albany Indus. Dev. Agency, 200 AD3d 1282, 1289 [3d Dept 2021], lv denied 38 NY3d 909 [2022]; Matter of Court St. Dev. Project, LLC v Utica Urban Renewal Agency, 188 AD3d 1601, 1603 [4th Dept 2020]).
For the foregoing reasons, we respectfully dissent from our colleagues in the majority, and we would affirm.
Fisher, J., concurs.
ORDERED that the judgment is reversed, on the law, without costs, petition granted and matter remitted to respondent Town of Thompson Planning Board for further proceedings not inconsistent with this Court's decision.

Footnotes

Footnote 1: Contrary to our dissenting colleagues' approach, in a situation such as this where there is conflicting evidence in the record concerning whether a project fits a permissible or prohibited use, it is not the function of this Court to resolve that issue by determining the amount of weight, if any, that should be accorded to that evidence. Our approach, on the other hand, declines to assign any weight to the record evidence — expert or otherwise — but instead simply identifies that conflicting evidence exists and acknowledges who can properly make the appropriate zoning determination.

Footnote 2: The certified planner's memorandum and a letter from petitioners' counsel make clear that they both had been hired by the Lake Communities Alliance. Although that entity is not a named party in the instant matter, the petition expressly states that "[p]etitioners are all associated with Lake Communities Alliance."

Footnote 3: We also have concerns that the majority's reliance on the opinion of petitioners' certified planner impermissibly "invade[s] the province of the [Planning] Board and improperly evaluate[s] expert evidence" (Matter of Barnes Rd. Area Neighborhood Assn. v Planning Bd. of the Town of Sand Lake, 206 AD3d at 1509 n 3; see Matter of Albany-Greene Sanitation v Town of New Baltimore Zoning Bd. of Appeals, 263 AD2d 644, 646 [3d Dept 1999], lv denied 94 NY2d 752 [1999]).

Footnote 4: As previously noted, the Planning Board expressly prohibited the construction and operation of anything other than a warehouse. Glen Wild would therefore be unable to commence construction on anything other than a warehouse, as issuance of a building permit requires an inspection that must confirm compliance with the zoning code and with the plan approved by the Planning Board (see Code of the Town of Thompson §§ 250-41 [C]; 250-42; 250-60 [D] [1]). Further, upon completion of construction, no business may begin operating on the premises without a certificate of occupancy, issuance of which likewise requires compliance with the zoning code (see Code of the Town of Thompson §§ 250-41 [C]; 250-43).